UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL LYNN GABRIEL, | |
| Plaintiff, | 3:08-cv-00497-LRH-VPC |
| v. | |
| GENERAL SERVICES ADMINISTRATION, MARK D. KHORSANDI, and LEONID GUERVICH, | ORDER |
| Defendants. | |

Before the court is Defendant General Services Administration's ("GSA") Motion to Dismiss (#4[1]). Plaintiff Michael Lynn Gabriel has filed an opposition (#6) to which GSA replied (#7). Plaintiff has also filed an amended complaint (#13). In response, GSA filed a renewed motion to dismiss (#16).[2] Plaintiff has filed an opposition (#19) to which GSA replied (#20).

///

///

///

---

[1] Refers to the court's docket entry number.

[2] The parties appear to agree that, in light of the amended complaint, GSA's first motion to dismiss (#4) is moot. Accordingly, the court will deny the first motion to dismiss (#4), and in this order the court will discuss only GSA's renewed motion to dismiss (#16).

## I. Facts and Procedural History[3]

This case arises out of GSA's sale of two lighthouses. The National Historic Lighthouse Preservation Act of 2000 ("NHLPA"), 16 U.S.C. § 470w-7, is an amendment to the National Historic Preservation Act of 1966, 16 U.S.C §§ 470-470X-6, that authorizes GSA to convey historic lighthouses. *See* 16 U.S.C. § 470w-7(b).

Pursuant to the NHLPA, on June 5, 2008, GSA's Massachusetts office placed for sale in separate online auctions two lighthouses, the Old Orchard lighthouse and the West Bank lighthouse. Both lighthouses are located in New York.

Identical "Instructions to Bidders" governed both auctions. Pursuant to the instructions, neither auction had a specific closing date. Instead, the instructions indicate:

> Once bidding slows down, a date will be set for the receipt of final bids. On that date, if no increased bid is received by 3:00 p.m. Eastern Daylight Time, then bidding will close at 3:00 p.m. and consideration will be given to selling the Property to the high bidder. If an increased bid is received on a timely basis, then bidding will be continued over until the next business day on the same terms. Eventually, no one will outbid the high bidder and bidding will close at 3:00 p.m. Eastern Daylight Time on that day. **The Government reserves the right to increase the minimum bid increment once the soft close date has been established.** There is no advantage to waiting until the last minute to bid.

U.S. GEN. SERVICES ADMIN.: FOR SALE BY ONLINE AUCTION HISTORIC WEST BANK LIGHTHOUSE 18, *available at* http://auctionrp.com/documents/item/westbankifb%20(final).doc; U.S. GEN. SERVICES ADMIN.: FOR SALE BY ONLINE AUCTION HISTORIC OLD ORCHARD SHOAL LIGHT STATION 17, *available at* http://auctionrp.com/documents/item/oldorchardifb(final).doc.

It appears that as bidding slowed, GSA set August 26, 2008, as the date for receipt of final bids. On that day, before 3:00 p.m., Plaintiff entered bids of $230,000 for the Westbank lighthouse and $175,000 for the Old Orchard lighthouse. As a result of these bids and pursuant to the instructions, GSA extended the closing dates one more day to 3:00 p.m. on August 27, 2008.

---

[3]Because the court will grant Plaintiff's request for leave to file a second amended complaint, the court has taken the following facts from the second amended complaint.

2

1   On August 27, 2008, at 6:03:55 a.m., Defendant Mark Khorsandi, submitted a bid of
2   $245,000 for the West Bank lighthouse.  Likewise, before 9:00 a.m. on August 27, 2008, four
3   additional bids, including one from Plaintiff, were submitted for the Old Orchard lighthouse.
4   Defendant Leonid Guervich submitted the final bid of $235,000.00 at 8:59:34 a.m.

5   Between 3:00 and 4:00 p.m. on August 27, 2008, Plaintiff attempted to submit higher bids
6   for both lighthouses.  However, he was not permitted to do so.  In response, Plaintiff immediately
7   telephoned GSA's Massachusetts office and spoke with GSA employees John Dugan and Meta
8   Cushing.  The employees informed Plaintiff that the auctions had been closed because no higher
9   bids had been received before 3:00 p.m. on August 27, 2008.  The employees explained that only
10  those bids submitted between 9:00 a.m. and 3:00 p.m. can extend the auctions' closing dates.
11  Plaintiff objected, noting that this information was not included anywhere in the terms governing
12  the auctions.

13  Thus, although bids were submitted on August 27, 2008, those bids did not extend the
14  auctions' closing dates because the bids were not submitted after 9:00 a.m. and before 3:00 p.m.
15  As a result, the auctions closed on August 27, 2008, with Defendant Khorsandi as the highest
16  bidder for the West Bank lighthouse and Defendant Guervich as the highest bidder for the Old
17  Orchard lighthouse.

18  Plaintiff appealed the results of the auctions, and on September 2, 2008, GSA conducted an
19  administrative review.  GSA confirmed that only bids received between 9:00 a.m. and 3:00 p.m.
20  extend an auction another day, and because GSA did not receive any bids during that time period
21  on August 27, 2008, both the West Bank lighthouse and the Old Orchard lighthouse auctions
22  closed before Plaintiff submitted his final bids.
23  ///
24  ///
25  ///
26

3

**II. Discussion**

In the second amended complaint, Plaintiff asserts the following claims for relief against GSA: (1) "declaratory relief for West Bank" pursuant to the NHLPA and the Administrative Procedures Act; (2) "declaratory and injunctive relief for Old Orchard Lighthouse" pursuant to the NHLPA and the Administrative Procedures Act; (3) "declaratory and injunctive relief[,] purchase of Old Orchard" pursuant to the NHLPA and the Administrative Procedures Act; and (4) a violation of the Fair Housing Act, 42 U.S.C. §§ 3601-3631.[4]

GSA seeks dismissal of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), arguing that this court lacks jurisdiction to hear Plaintiff's claims, Plaintiff has failed to state a claim upon which relief can be granted, and Plaintiff has failed to join necessary and indispensable parties. The court will address each of these arguments below. However, before the court does so, the court will first consider whether to permit Plaintiff to submit a second amended complaint.

**A. Second Amended Complaint**[5]

Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading once "as a matter of course" before a responsive pleading is served. Fed. R. Civ. P. 15(a). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2); *Jones v. Bates*, 127 F.3d 839, 847 n.8 (9th Cir. 1997); *DCD Program, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987).

"In exercising its discretion, 'a court must be guided by the underlying purpose of Rule 15 –

---

[4] Plaintiff's first three claims also appear to incorporate claims for denial of equal protection. In addition, Plaintiff also asserts claims against Defendant Khorsandi and Defendant Guervich.

[5] Although Plaintiff has not filed a motion for leave to file a second amended complaint, the court construes his attachment of the proposed second amended complaint to his opposition (#18) as such a request.

to facilitate a decision on the merits rather than on the pleadings or technicalities.'" *DCD Program*, 833 F.2d at 186 (*quoting United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality" insofar as the motion to amend is not sought in bad faith, does not cause the opposing party undue delay, does not cause the opposing party undue prejudice, and does not constitute an exercise in futility. *Id*. at 186. The party opposing the amendment bears the burden of showing prejudice. *Id.* at 187 (*citing Beeck v. Aqua Slide' N' Dive Corp.*, 562 F.2d 537, 540 (8th Cir. 1977)).

Plaintiff's proposed second amended complaint addresses jurisdictional issues raised in the renewed motion to dismiss. In particular, for the first time, the second amended complaint identifies the Administrative Procedures Act as the jurisdictional basis for Plaintiff's claims for declaratory relief. GSA does not appear to challenge the second amended complaint. Indeed, GSA agrees that the amendment "cure[s] one of the grounds for dismissal of the claims against GSA . . . ." (Def.'s Reply (#20) at 2.)

The court has reviewed the proposed amendments in light of the relevant law and finds that Plaintiff does not seek the amendments in bad faith, the amendments will not cause GSA undue delay or prejudice, and the amendments are not futile. Accordingly, the court will grant Plaintiff leave to file the second amended complaint.

///
///
///
///
///
///
///
///

### B. Subject-Matter Jurisdiction[6]

GSA first argues the court lacks jurisdiction because Plaintiff's complaint relies solely on the Declaratory Judgment Act as a basis for the court's jurisdiction. The Declaratory Judgment Act is procedural and does not confer subject matter jurisdiction on the federal court. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). However, as discussed above, Plaintiff's second amended complaint cures the jurisdictional defects in the first amended complaint by identifying the Administrative Procedures Act as the basis for Plaintiff's declaratory relief claims. Accordingly, as GSA recognizes, GSA's jurisdictional challenge is effectively moot.

### C. Failure to State a Claim

GSA attacks Plaintiff's Fair Housing Act claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter,

---

[6]The court construes the renewed motion to dismiss as being addressed to the second amended complaint. Although GSA filed the renewed motion to dismiss before Plaintiff sought to file the second amended complaint, "Defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed. 1990). Because the amended complaint does not cure all of the issues raised by the renewed motion to dismiss and because the court grants the motion to amend, the court will consider the renewed motion to dismiss as being addressed to the second amended complaint.

accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1949 (internal quotation marks omitted).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true and views those facts in the light most favorable to the plaintiff. *See id.* (citation omitted); *Burlington N. Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1088 (9th Cir. 2007) (citation omitted).  However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, No. 07-36018, 2009 LEXIS 15694, at *14-15 (9th Cir. July 16, 2009) (for publication) (*quoting Iqbal*, 129 S. Ct. at 1951) (alteration in original) (internal quotation marks omitted).  The court discounts these allegations because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* at *15 (*citing Iqbal*, 129 S. Ct. at 1951.)  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* at *16 (*quoting Iqbal*, 129 S. Ct. at 1949).

Plaintiff alleges GSA violated the Fair Housing Act by discriminating against him in the sale of the lighthouses because he is Palestinian.  In relevant part, the Fair Housing Act prohibits discrimination in the sale or rental of housing. *See* 42 U.S.C. § 3604.  In particular, the Act prohibits a seller from "discriminat[ing] against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race, color, religion, sex, familial status, or national

7

origin." 42 U.S.C. § 3604(b).

GSA argues Plaintiff cannot state a claim under the Fair Housing Act because a lighthouse is not a "dwelling" within the meaning of the Act. The Act defines a "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended to be occupied as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." 42 U.S.C. § 3602(b).

The Supreme Court considers the Fair Housing Act to be a "broad and inclusive" statute that courts should afford a "generous construction." *United States v. Gilbert*, 813 F.2d 1523, 1526-27 (9th Cir. 1987) (*quoting Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)). The Act itself does not define the meaning of "residence" as used in the definition of "dwelling," and the Ninth Circuit has yet to provide a definition. However, in determining whether a dwelling is "occupied as, or designed or intended to be occupied as, a residence," other courts have looked to the ordinary meaning of the term "residence" as adopted in *United States v. Hughes Mem'l Home*, 396 F. Supp. 544, 548-49 (W.D. Va. 1975). *See Hernandez v. Ever Fresh Co.*, 923 F. Supp. 1305, 1308 (D. Or. 1996); *Villegas v. Sandy Farms, Inc.*, 929 F. Supp. 1324, 1327 (D. Or. 1996); *see also Lakeside Resort Enterprises v. Bd. of Supervisors of Palmyra Twp.*, 455 F.3d 154, 156-57 (3d Cir. 2006). Citing Webster's Third New International Dictionary, the court in *Hughes Memorial* defined a "residence" as a "temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit." *Hughes Mem'l Home*, 396 F. Supp. at 549.

Recognizing the "broad and inclusive" nature of the Act, courts have interpreted Act's use of "dwelling" and "residence" to include a needy children's home, an unoccupied house that a family intended to occupy, a house under construction for occupancy, a vacant lot offered for sale, homeless shelters, seasonal bungalows, group homes for recovering drug addicts and alcoholics,

and hospice facilities for AIDS patients. *See Gilbert*, 813 F.2d at 1527 (citations omitted) (summarizing cases); *Villegas*, 929 F. Supp. at 1327 (citations omitted) (summarizing cases). Thus, the term "dwelling" as used in the Fair House Act includes dwellings that are not in existence or currently occupied and those that are not "permanent or associated with property rights." *Gilbert*, 813 F.2d at 1528.

GSA asks the court to rule as a matter of law that the lighthouses are not dwellings within the meaning of the Fair Housing Act. GSA notes that, although "lighthouse keepers" historically resided at lighthouses, because lighthouses are now automated, neither "lighthouse keepers" nor any other individuals currently reside in the lighthouses. Plaintiff counters that he intends to use the lighthouses as personal residences for either himself or his family.

At this time the court is not prepared to rule as a matter of law that the lighthouses are not dwellings covered by the Fair Housing Act. To make such a determination, the court will have to consider evidence not currently before the court.[7] The court notes that it is not clear whether purchasers of lighthouses from GSA are entitled to reside in the lighthouses or whether the lighthouses are capable of being used as residences. Accordingly, the court will deny GSA's Renewed Motion to Dismiss with regard to the Fair Housing Act claim.[8]

///
///
///
///
///
///

---

[7] In claiming that he intends to use the lighthouses as residences, Plaintiff fails to provide an affidavit or other evidence indicating such an intent. Regardless, such evidence would be inappropriate for consideration on a motion to dismiss.

[8] GSA is free to challenge the Act's application to the lighthouses at later stages in the litigation.

**D.  Failure to Join a Necessary and Indispensable Party**[9]

Finally, GSA seeks dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(7) for failure to join necessary and indispensable parties.  In particular, GSA maintains that Defendant Khorsandi and Defendant Guervich, the highest bidders for the lighthouses at issue, are necessary and indispensable parties.

Determining whether a party is necessary and indispensable under Rule 19 involves a three-step inquiry.  *Equal Employment Opportunity Comm'n v. Peabody W. Coal. Co.*, 400 F.3d 774, 779 (9th Cir. 2005) (citations omitted).  First, under Rule 19(a), the court determines whether a party is "necessary."  *Id.*  If the court finds that the absent party is a necessary party, the court must then determine whether joinder of the party is feasible.  *Id.*  Finally, if joinder is not feasible, the court determines whether the case can proceed without the absent party or whether the absent party is an "indispensable" party such that the court must dismiss the action.  *Id.*  "The inquiry is a practical one and fact specific, and is designed to avoid the harsh results of rigid application."  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

Plaintiff does not dispute that Defendant Khorsandi and Defendant Guervich are necessary parties under Rule 19(a) because, as the highest bidders, they each have a legally protected interest in the lighthouses.  Instead, the parties primarily dispute whether joinder of Defendant Khorsandi and Defendant Guervich is feasible.

Under Rule 19(a), joinder is not feasible where venue is improper, the absent party is not subject to personal jurisdiction, and when joinder would destroy the court's subject matter jurisdiction.  *Peabody W. Coal.,*, 400 F.3d at 779 (citations omitted).  GSA contends joinder of Defendant Khorsandi and Defendant Guervich is not feasible because the defendants are not

---

[9]The 2007 amendment to Rule 19 changed the language of the rule, eliminating the term "indispensable" and replacing "necessary" with "required."  However, the changes were intended to be stylistic only.  Fed. R. Civ. P. 19 advisory committee notes; *see also Republic of the Philippines v. Pimentel*, 128 S. Ct. 2180, 2184 (2008).  Because the traditional terms are terms of art used by courts and commentators and because the parties have used the traditional terms in their briefs, for clarity the court does the same here.

10

subject to service of process. In particular, GSA argues the court lacks personal jurisdiction over these defendants because the defendants reside out of state and have no contacts with the state of Nevada.

GSA, as the moving party, bears the burden of demonstrating Defendant Khorsandi and Defendant Guervich are necessary and indispensable parties under Rule 19. *See Verity*, 910 F.3d at 558 (stating in discussion of district court's dismissal for failure to join necessary and indispensable parties, "The moving party has the burden of persuasion in arguing for dismissal.") GSA has failed to meet its burden at this time. In arguing that the court lacks personal jurisdiction over the absentees, GSA fails to provide evidence demonstrating that the defendants have no contacts with the state of Nevada. Without such evidence the court cannot find that it lacks personal jurisdiction over Defendant Khorsandi and Defendant Guervich such that their joinder is not feasible. Accordingly, the court will deny GSA's motion to dismiss.[10]

IT IS THEREFORE ORDERED that GSA's Motion to Dismiss (#4) and Renewed Motion to Dismiss (#16) are DENIED.

IT IS FURTHER ORDERED that Plaintiff is GRANTED leave to file a second amended complaint.

IT IS SO ORDERED.

DATED this 24th day of August, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[10] Should GSA obtain the evidence necessary to demonstrate that joinder of Defendant Khorsandi and Defendant Guervich is not feasible, GSA is free to present this evidence and corresponding arguments at that time.